```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| ROSE THOMAS KENNEDY | : | CIVIL ACTION |
| v. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 08-5933 |

MEMORANDUM

Dalzell, J.                                                December 7, 2010

Plaintiff Rose Thomas Kennedy here sues Philadelphia Police Officers Kert Wilson, William Bonner, James Mostiller, Alexander DeJesus and William Kozlowski, and Sergeants James Ferguson and Maurice Black (collectively, "defendant officers") under (a) 42 U.S.C. § 1983 for violations of the Fourth Amendment for excessive force (Count I), (b) the Fourteenth Amendment for a violation of her substantive due process rights (Count II), and (c) state law for intentional infliction of emotional distress (Count IV). She also asserts a <u>Monell</u> claim against the City of Philadelphia ("the City") (Count III).

Defendants have filed a motion for summary judgment and a motion to strike as untimely plaintiff's response to their motion for summary judgment. For the reasons we discuss in some detail below, we will deny defendants' motion to strike, and grant in part and deny in part defendants' motion for summary judgment.

## I. Factual Background

Kennedy claims in her amended complaint that on December 28, 2006, at around 8:30 in the evening, she was at her mother's house, where she lives with her young son. Am. Compl. at ¶ 8. Kennedy's mother called the police because Kennedy's brother, who lived elsewhere, refused to leave his mother's house after she asked him to leave. Id. at ¶ 9. Once the police arrived, Kennedy's mother argued with the police because they refused to remove her son from the property. Id. at ¶ 10. Because Kennedy's mother and the police officers were "unable to resolve the situation," Kennedy called 911 emergency services and requested that a supervisor be sent to the house. Id. at ¶ 12. A supervisor did arrive at the house, and Kennedy asked him to remove the police officers. Id. at ¶ 13.

Kennedy claims that without cause or provocation one of the officers who arrived at her house -- in the amended complaint she does not specify which one -- hit her in the stomach with his night stick even though she was seven and a half weeks pregnant. Id. at ¶ 15. Shortly after she was hit, Kennedy contends that she began to experience vaginal bleeding and went to the University of Pennsylvania Hospital. Id. at ¶ 17. Sometime thereafter, Kennedy avers that she underwent a procedure to have

the dead fetus removed from her womb.  Id. at ¶ 18.  Kennedy claims that the physical and emotional injuries she sustained were the direct result of a blow she received from the night stick of one of the officers and that these injuries may be permanent in nature.  Id. at ¶¶ 18, 23-24.  Kennedy contends that she has had to pay for medical expenses and that these expenses are ongoing.  Id. at ¶ 25-26.  Kennedy also claims to have experienced a loss of enjoyment of life, inconvenience, mental anguish and humiliation.  Id. at ¶ 27.

**II.  Analysis**

We will first address defendants' motion to strike plaintiff's response to their motion for summary judgment as untimely.  In an August 4, 2010 Order, we obliged plaintiff to file her response by August 11, 2010.  Plaintiff filed her response in its entirety the next day, but (according to plaintiff's response to the motion) she attempted three times to file the response on August 11 and, in fact, succeeded in filing the memorandum of law in opposition to defendants' motion for summary judgment on that day, although not all of the exhibits.  Under such circumstances, there is no just reason to strike plaintiff's response, and we will deny the motion to strike.

We next address defendants' motion for summary judgment.[1] Defendants argue in this motion that each of plaintiff's claims must fail, in essence because she cannot identify the police officer who allegedly used force against her, and, in the case of the Monell claim against the City, because she cannot establish that the City failed to train its police officers in the proper use of force. Def. Mem. of Law in Supp. of Def.'s Mot. for Sum. J. ("Def. MSJ") at 3.

**A.  Count I: Excessive Force**

Kennedy claims that the defendants are liable because they used excessive force against her in violation of her Fourth Amendment rights, and requests relief under § 1983. Kennedy's case is very similar to Tillio v. Montgomery County, 695 F. Supp. 190, 193 (E.D. Pa. 1988)(Pollak, J.). In Tillio, the plaintiff claimed that he had been "punched in the back" by a sheriff as

---

[1] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over that presented by the moving party. Id. at 255.

4

the sheriff placed him in a cell in the courthouse, but at the time that defendants filed their motion for summary judgment, plaintiff had yet to determine the identity of the sheriff. Judge Pollak allowed plaintiff to conduct limited additional discovery to determine the identity of the sheriff. Like the plaintiff in Tillio, Kennedy has alleged facts of excessive and unnecessary force sufficient to support a § 1983 claim. Tillio, 695 F. Supp. at 193; see also Sambrick v. Borough of Norristown, 639 F. Supp. 1351, 1355 (E.D. Pa. 1986). And just as in Tillio, Kennedy's amended complaint fails to meet the minimal requirement of factual specificity necessary to support a viable § 1983 claim. Plaintiff describes the time, place and circumstances of getting hit in the stomach by an officer wielding a billy club, but fails to identify the officer who allegedly did it. "This omission clearly frustrates the requirement that § 1983 complaints contain, inter alia, sufficient facts to provide defendants with adequate notice to frame an answer." Tillio, 695 F. Supp. at 193.

Finally, as in Tillio, Kennedy arguably has not had sufficient opportunity to discover the identity of the officer who allegedly hit her in the stomach on the morning of December 29, 2006. We will thus deny defendants' motion for summary

5

judgment as to Count I.  We will allow Kennedy limited discovery for the purpose of identifying the officer and afford her a final opportunity to amend her complaint if the additional discovery warrants it.  We will therefore order the City to make available for deposition all of the officers plaintiff wishes to depose regarding the December 28-29 events.

In addition, there may be a genuine issue of material fact as to the time that the incident occurred.  Plaintiff testified at her deposition that she was assaulted between 7:00 p.m. and 11:00 p.m. on the evening of December 28, 2006, but plaintiff is apparently mistaken because other evidence suggests that the incident took place after 2:00 a.m. and not between 7:00 p.m. and 11:00 p.m.[2]  Officer Crawford, who received a 911 call that evening from Kennedy's mother's house and responded to it, testified that he received the call at 2:03 a.m. on the morning of December 29, 2006, and the next minute arrived at Kennedy's mother's house where he found Kennedy.  Pl. Resp., Ex. 4 at 9:2-

---

[2] In her deposition, Kennedy claimed that the incident occurred between 7:00 p.m. and 11:00 p.m. on the evening of December 28, 2006, Def. MSJ, Ex. A at 43:19-23.  But in their discovery disclosures, defendants submitted a log showing that each of the defendants did not arrive at the site of the incident until after 2:00 a.m. on December 29, 2006, Pl. Resp., Ex. 3 at 1.

6

11:14. Since the timing issue may bear on who, exactly, was deployed to the house, we will for now assume it has sufficient materiality.

**B.    Count II: Substantive Due Process**

Kennedy claims that the defendants are liable because their arbitrary and capricious use of force violated her Fourteenth Amendment substantive due process rights under § 1983. In <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994), the Supreme Court held that where "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." <u>Id.</u> (internal quotation marks omitted). Here, the Fourth Amendment provides the "explicit textual source of constitutional protection" against a municipality's use of excessive force. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (holding that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and not under a "substantive due process" approach).

The Fourth Amendment -- and not "a generalized notion of substantive due process" -- provides the appropriate framework for analyzing plaintiff's claims. Accordingly, we will dismiss Kennedy's substantive due process claim.

Plaintiff also attempts to use the theory of state-created danger to argue that the City violated her substantive due process rights. Because we have already determined that her excessive force claim is most appropriately brought under the Fourth Amendment and not the Fourteenth, her state-created danger argument premised upon the latter Amendment must necessarily fail as well.

**C.   Count III: The Monell Claim**

With regard to Kennedy's Monell claim, defendants argue that she cannot satisfy her burden of proof because she cannot show an underlying constitutional violation, or, if she can, that she cannot show that the constitutional violation was the result of a municipal policy, custom or practice.  Def. MSJ at 9.

A § 1983 complaint against a municipality must allege (1) the existence of a custom or policy of the municipality which is of such long standing as to have the force of law, and (2) that one of the municipality's employees violated the plaintiff's

civil rights while acting pursuant to this custom or policy. See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691-94 (1978). The Supreme Court has held that municipal liability under § 1983 only attaches when the "execution of a government's policy[3] or custom,[4] whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

---

[3] A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers." Monell, 436 U.S. at 690; see also Berg v. Cnty. of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.") (internal quotation marks omitted). Such a policy "generally implies a course of action consciously chosen from among various alternatives." City of Okla. City v. Tuttle, 471 U.S. 808, 823 (1985).

[4] The absence of a policy does not thereby relieve a municipality of liability. Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990). A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law." Bd. of Cnty. Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997); see also Bielevicz, 915 F.2d at 851 (stating that a constitutionally deficient custom may be found to exist when "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations"). This requirement should not be construed so broadly as to circumvent Monell: "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy ..." Tuttle, 471 U.S. at 823-824.

9

official policy, inflicts the injury. . . ." Id., 436 U.S. at 694.

Once a § 1983 plaintiff identifies a municipal policy or custom, he must "demonstrate that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged." Bryan County, 520 U.S. at 404 (emphasis in original). If the policy or custom does not facially violate federal law, causation can be established only by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." Id. at 407 (citations omitted); see also City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

Kennedy argues that she has a viable Monell claim as a result of (1) the violative customs and practice of the City of Philadelphia, and (2) the City's failure to train. Pl. Resp. at 24. Plaintiff claims, however, that she has not had the opportunity to depose defendants on aspects of the City of Philadelphia's potentially improper customs and practices. Instead, Kennedy points generally to the "incessant scandals of the Police Department relating to corruption, falsification of police report [sic] and unjustified violence." Pl. Resp. at 25.

Plaintiff claims that defendants' response to her 911 call enhanced the danger to her instead of reducing it, and that this is an example of how our nation has historically "sanctioned and condoned crimes of violence against women." Id. at 10. But plaintiff does not allege what the exact nature of the custom or policy <u>of the City</u> -- rather than of the nation at large -- was that would have given rise to her injuries, and so she cannot sustain a Monell claim against the City on that basis.

Kennedy also argues that her Monell claim could survive a motion for summary judgment if she were allowed more time for discovery because she will be able to show that the City failed to train the officer who hit her. A § 1983 claim for inadequate training exists "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388. The failure to train must reflect a "deliberate" or "conscious" choice and the deficiency "must be closely related to the ultimate injury." Id. at 379. Failure to train only becomes "deliberate" where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the

11

city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.

Failure to screen adequately or train municipal employees can be considered deliberate indifference only where the failure has caused a pattern of violations. See Bryan County, 520 U.S. at 408-09. Although it is possible to maintain a claim of failure to train without demonstrating such a pattern, Bryan County made clear that the burden on the plaintiff in such a case is high:

> In leaving open in Canton the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice -- namely, a violation of a specific constitutional or statutory right.

Id. at 409. City of Canton noted that an example of deliberate indifference to an obvious risk would be arming officers

12

without training them "in the constitutional limitations on the use of deadly force." City of Canton, 489 U.S. at 390 n.10.

At her deposition, Kennedy identified the police officer who assaulted her as a "[w]hite man, blue eyes, short, skinned head, shaved, about 5'3", 5'4", approximately 170 to 200 pounds," Def. MSJ, Ex. A at 44. During Kennedy's deposition, defendants' counsel showed her a series of pictures of white men, "some of whom were assigned to the 16th District on December 28, 2006 and December 29, 2006." Id. at 46. Kennedy circled the photographs of two white male police officers, noting that each "sort of" fit the description. Id.

One of the officers whose picture Kennedy circled, Officer Thomas Prieb, was not a member of the Philadelphia Police Department in December of 2006. Id., Ex. B at ¶ 6. The other officer whose picture plaintiff circled, Officer William Kozlowski, was a member of the Philadelphia Police Department that night, and, in fact, was on duty the night of December 28-29, 2006, responded to the call, and went to plaintiff's mother's house at roughly 2:10 a.m. according to the log defendants produced during discovery.

Kennedy theorizes that because Officer Kozlowski had recently returned from a tour of military duty in Iraq and the

13

City had not given him any mandatory annual training for 2005 and 2006 before he responded to any calls as a police officer, the City had failed to train him on how to deal with civilians when he returned to urban civilian duty.  Pl. Resp. at 26.  But Kennedy cites no authority to support this theory, nor does she explain how her injury was an "obvious" consequence of the policymakers' choice, assuming that the City had indeed chosen not to require Officer Kozlowski to attend refresher training on his return from Iraq.  Thus, we find that even if Kennedy discovers that Kozlowski was indeed the officer who injured her, she will not be able to prove the requisite link between the City and Kozlowski's actions to support a Monell claim.  Therefore, we will grant summary judgment on plaintiff's Monell claim (Count III) against the City.

### D. Count IV: Intentional Infliction of Emotional Distress

Defendants argue in their motion for summary judgment that plaintiff's intentional infliction of emotional distress claim against the defendant officers cannot stand because the officer who allegedly hit her has not been identified, and because she has produced no competent medical evidence that she actually suffered any emotional distress.  Def. MSJ at 13-14.

14

To establish an intentional infliction of emotional distress claim under Pennsylvania law, a plaintiff must prove that: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct must have caused emotional distress; and (4) the distress must be severe. <u>Bruffett v. Warner Communications, Inc.</u>, 692 F.2d 910, 914 (3d Cir. 1982) (rehearsing Pennsylvania authority). The defendant's misconduct must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."[5] <u>Swisher v. Pitz</u>, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) (internal quotation marks omitted).

Because the officer has not yet been identified and we are granting plaintiff leave to file an amended complaint, we will at this juncture deny without prejudice defendants'

---

[5] The Supreme Court of Pennsylvania has cited as conduct that courts have found sufficiently outrageous to warrant this cause of action (1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's indictment for homicide; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease. <u>Hoy v. Angelone</u>, 720 A.2d 745, 754 (Pa. 1998).

motion for summary judgment with regard to the intentional infliction of emotional distress claim.

BY THE COURT:


\_\_\s\Stewart Dalzell